UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLOBAL LICENSING, INC.,
a Michigan Corporation,

                Plaintiff,

v.

NAMEFIND LLC,
a Delaware Limited Liability Company,

                Defendant.

_____/

Case No. 21-cv-11101

Paul D. Borman
United States District Judge

## OPINION AND ORDER DENYING DEFENDANT NAMEFIND LLC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) (ECF NO. 10)

This is a federal trademark infringement and cybersquatting case involving Defendant Namefind, LLC's alleged unauthorized use of Plaintiff Global Licensing, Inc.'s DEJA VU federally registered family of marks, which includes, among others, DEJA VU SHOWGIRLS, on Defendant's registered, pay-per-click website, dejavushowgirls.com. Now before the Court is Defendant Namefind LLC's Motion to Dismiss Plaintiff's Complaint pursuant to Fed. Civ. P. 12(b)(6) (ECF No. 10), which has been fully briefed. The Court does not believe that oral argument will aid in its disposition of the motion; therefore, it is dispensing with oral argument

pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons that follow, the Court DENIES Defendant's motion to dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.     Relevant Facts[1]

Plaintiff Global Licensing, Inc. (Plaintiff or Global) is a preeminent licensing company and the owner of certain DEJA VU Family of Marks, which Plaintiff, and its predecessor owner of the Marks, Deja Vu Consulting (Consulting), have used for many years in connection with their licensing of "entertainment services and establishments." (ECF No. 1, Compl. ¶¶ 8-9.) Plaintiff's DEJA VU Family of Marks includes, among others, the registered mark DEJA VU SHOWGIRLS (Registration Nos. 2297838 and 4208158). (*Id.* ¶¶ 8-11.) Plaintiff currently licenses the DEJA VU Family of Marks to over 40 businesses throughout the United States under well-known names and trademarks, including Deja Vu, Deja Vu Showgirls, and Deja Vu Erotic Ultra Lounge. (*Id.* ¶ 9.)

Plaintiff has further developed the DEJA VU Family of Marks in connection to the sale of goods, and on social media sites that incorporate "DEJA VU," and Plaintiff maintains a website for its entertainment services at www.dejavu.com.

---

[1] For the purposes of a motion to dismiss, the Court takes the factual allegations in Plaintiff's Complaint as true. *See Erickson v. Pardus*, 551 U.S. 89. 94 (2007).

(Compl. ¶¶ 12-15.) As a result of Plaintiff's over 30 years of continuous and extensive use of the DEJA VU Family of Marks in connection with Plaintiff's licensing of entertainment establishments across the country, the DEJA VU Family of Marks have developed considerable customer recognition and are famous and/or distinctive. (*Id.* ¶¶ 16, 40.) In addition to its U.S. Registrations, Plaintiff is the owner of registrations for numerous DEJA VU Marks in Australia, Austria, Canada, Germany, France, Great Britain, Japan, Poland, Mexico, Switzerland, and New Zealand. (*Id.* ¶ 21.)

Defendant Namefind LLC is the registrant of the domain name, dejavushowgirls.com. (Compl. ¶ 37.) Plaintiff alleges that it commenced use of the DEJA VU Family of Marks "long prior" to Defendant's registration of that Domain Name, and that dejavushowgirls.com is identical and/or confusingly similar to Plaintiff's Family of Marks, with .com appended to the end. (*Id.* ¶¶ 10, 22.) Plaintiff has not authorized Defendant's use of the Domain Name, and Defendant has no intellectual property rights in or to the DEJA VU Family of Marks. (*Id.* ¶¶ 22, 43.)

When a person attempts to access the dejavushowgirls.com domain, the Defendant Domain Name is configured to display pay-per-click advertisements to

visitors, when those visitors were actually seeking the Plaintiff's dejavu.com site. (Compl. ¶ 25.)[2]



---

[2] "Pay-per-click" is defined as a business model whereby a company that has placed an advertisement on a website pays a sum of money to the host website when a user clicks on to the advertisement. *See FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1291 (11th Cir. 2011) ("Pay-per-click means that an advertiser only pays when an Internet user clicks on its ad and gets transferred to its website. These clicks are supposed to be highly qualified leads likely to convert into a sale, since the user intentionally clicked on the ad and, therefore, presumably has some interest in the advertised product."). In monetizing a domain, advertisements are placed on "parked" domain names, such as dejavushowgirls.com, as a means by which to "generate revenue for both the party that owns the domain and the party that places the advertisement." *HCB, LLC v. Oversee.net,* No. 2007–29, 2009 WL 2996578 at *2, n. 1 (D.Vi. Sept.16, 2009) (explaining that "[w]hen an internet user visits the 'parked' domain name, he or she is shown advertisements provided by search engines and other providers of pay-per-click advertising. These advertisers pay the domain monetizing specialists, who in turn pay the owner of the 'parked' domain name.").

(ECF No. 1-4, Ex. C to Compl., PageID.58.) The pay-per-click advertisements under Defendant's domain name provide, in part, links to other Adult-related entertainment sites, such as Love Honey and Mature-Quality singles. (Compl. ¶ 26, citing Ex. C, PageID.58-62.)

Plaintiff alleges that the use of dejavushowgirls.com on the top of defendant's website is a use in commerce. (Compl. ¶ 55.) Plaintiff further alleges that the website displayed by Defendant's Domain Name is likely to be confused with Plaintiff's legitimate online location at dejavu.com and the Deja Vu Family of Domains, or cause mistake, or deceive the public as to the source or sponsorship of that website, and to mislead the public into believing that such website emanates from, is approved or sponsored by, or is in some way associated or connected with, Plaintiff. (*Id*. ¶¶ 34-35.)

Plaintiff alleges, upon "information and belief," that Defendant's Domain Name "was registered for the purpose of obtaining Internet visitors when such visitors, intending to visit thedejavu.com, dejavushowgirl.com or other Global Deja Vu Family of domain sites, accidentally visit" the website resolving from Defendant's Domain Name. (Compl. ¶ 24.) Plaintiff also alleges, "[u]pon information and belief," that "the registrant of the Defendant Domain Name receives

5

compensation when Internet visitors, who were attempting to reach dejavu.com or other Global's [sic] Deja Vu Family of domains, click on a link provided by the Defendant Domain Name to a third-party website." (*Id.* ¶ 27.) Plaintiff further alleges, "[u]pon" information and belief," that the registrant of the Domain Name "intends to divert consumers from Global and its Licensees...either for commercial gain or with the intent to tarnish or disparage the DEJA VU Family of Marks, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site" resolving from the Domain Name. (*Id.* ¶¶ 32, 36.)

### B.    Procedural History

On May 13, 2021, Plaintiff filed its Complaint for Injunctive Relief and Damages against Defendant. (ECF No. 1, Compl.) Plaintiff alleges two claims: (1) Count I – Violation of the Federal Anti-Cybersquatting Consumer Protection Act (ACPA); and (2) Count II – Federal Service Mark Infringement, 15 U.S.C. § 1114(1)(a).

Defendant has filed a motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 10, Def.'s Mot.) Defendant argues that: (1) Plaintiff cannot state an ACPA claim because there are no well-pleaded, non-conclusory allegations demonstrating a "bad faith intent to profit," and (2) Plaintiff cannot state an infringement claim because there are no well-pleaded, non-conclusory allegations

6

demonstrating "use in commerce" or a likelihood of confusion. Defendant argues that the majority of the allegations in the Complaint are pleaded upon "information and belief," but that there are no factual allegations to support those conclusory contentions. Finally, Defendant contends that Plaintiff does not have the exclusive right to control domain names that include the character strings "dejavu" or "deja vu," which Defendant represents has been used by hundreds of other entities holding registered trademarks in this country, and around the world.[3]

Plaintiff filed a Response in opposition to Defendant's motion to dismiss. (ECF No. 15, Pl.'s Resp.) Plaintiff argues that its Complaint sufficiently pleaded that

---

[3] Defendant also filed a Request for Judicial Notice, requesting that the Court take judicial notice pursuant to Fed. R. Evid. 201 of two exhibits: (1) a copy of the landing page for the website resolving from the domain name dejavushowgirls.com as of August 31, 2021 (Ex. 1); and (2) a copy of the landing page for the website resolving from the domain name dejavu.com as of August 31, 2021 (Ex. 2). (ECF Nos. 12, 12-1, 12-3, 12-3.) Plaintiff did not directly respond to Defendant's Notice, but did argue in its Response brief that the Defendant's webpage attached to the Notice is an updated version of it website, taken *after* Plaintiff's Complaint was filed. (Pl.'s Resp. at p. 10, PageID.166.) The Court declines to take judicial notice for this reason. Plaintiff further contends that, after Defendant received Plaintiff's Complaint, it transferred the dejavushowgirls.com Domain to Quality Hosting, a Cayman Island company, and then enrolled the website in GoDaddy's free parking program, evidencing Defendant's bad faith intentions with regard to the Domain. (*Id.*, citing Ex. 3, ECF No. 15-4.) Defendant did not address this issue in its reply, other than to make the curious argument that Plaintiff is improperly relying on new allegations by addressing Defendant's newly updated website landing page. (Def.'s Reply at p. 6, PageID.255.)

Defendant's use of dejavushowgirls.com on the top of its website is a use in commerce, and that such use was likely to cause confusion because the dejavushowgirls.com site is identical to Plaintiff's DEJA VU SHOWGIRLS registered trademark. Plaintiff contends that it has stated a claim for cybersquatting under the ACPA, including sufficiently pleading Defendant's bad faith intent to profit.

Defendant filed a reply brief arguing that mere display of a domain name or advertising do not constitute "use" under the Lanham Act, and that there are no allegations in the Complaint that Defendant rendered services or sold goods in connection with the Domain Name. Defendant further contends that Plaintiff fails to plead that Defendant had a bad faith intent to profit, because the only allegations in the Complaint are alleged upon "information and belief."

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and

8

conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id*. at 539 (internal citations and quotation marks omitted); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is

the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings.... [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are

10

referred to in the complaint and central to the claim are deemed to form a part of the pleadings).

## III.  ANALYSIS

### A.    Plaintiff Has Stated a Claim for Cybersquatting under the ACPA (Count I)

The Anti-Cybersquatting Consumer Protection Act (ACPA) provides, in pertinent part:

> (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
>
> > (i) has a bad faith intent to profit from that mark...and
> >
> > (ii) registers, traffics in, or uses a domain name that—
> >
> > > (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; [or]
> > >
> > > (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark;...

15 U.S.C. § 1125(d)(1)(A).

In order to establish a "cybersquatting" claim under the ACPA, a plaintiff must establish that: (1) it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, plaintiff's mark; and (4)

11

defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit. *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004) (citing *Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 546 (6th Cir. 2003)).

In this case, Defendant argues that Plaintiff's ACPA claim (Count I) fails because (1) there are no non-conclusory allegations in the Complaint explaining how the content on the dejavushowgirls.com website could be confusingly similar to the "entertainment services" offered at Plaintiff's website at dejavu.com (element 3); and, (2) there are no well-pleaded, non-conclusory factual allegations sufficiently alleging that Defendant used the dejavushowgirls.com Domain Name with a bad faith intent to profit (element 5). (Def.'s Mot. at pp. 8-12, PageID.122-26.)

### 1. Identical or confusingly similar (third element)

Under the ACPA, domain names that incorporate an entire mark are normally confusing because consumers might think the domain name is used, approved, or permitted by the mark holder. *See Detroit Coffee Co., LLC v. Soup For You, LLC*, 396 F. Supp. 3d 754, 775 (E.D. Mich. 2019) (citing *DaimlerChrysler*, 388 F.3d at 206). Additionally, slight changes to a domain name, such as generic or minor words, are irrelevant. *Id.*

In this case, the Court finds that Defendant's Domain Name, dejavushowgirls.com, is "identical or confusingly similar to" Plaintiff's distinctive

12

mark, DEJA VU SHOWGIRLS, because the Domain Name incorporates Plaintiff's trademark. *See Ford Motor Co. v. Greatdomains.Com, Inc.*, 177 F. Supp. 2d 635, 641 (E.D. Mich. 2001) (concluding that "unless words or letters added to the plaintiff's mark within the domain name clearly distinguish it from the plaintiff's usage, allegations that a domain name incorporates a protected mark generally will suffice to satisfy the 'identical or confusingly similar to' requirement").

In *Greatdomains.Com,* the disputed domain names – 4fordparts.com, 4fordtrucks.com, lincolntrucks.com, jaguarcenter.com, jaguarenthusiastsclub.com, vintagevolvos.com, and volvoguy.com – incorporated either the FORD, LINCOLN, JAGUAR, or VOLVO trademarks, and the court held that the domain names were identical or confusingly similar. *Id.*; *see also DaimlerChrysler*, 388 F.3d at 205-06 (findings defendant's "foradodge.com" domain name confusingly similar to the plaintiff's distinctive and famous DODGE mark); *Audi AG v. D'Amato*, 381 F. Supp. 2d 644, 660-61 (E.D. Mich. 2005) (finding that the defendant's use of the Audi Trademarks in the domain names satisfies the "identical or confusingly similar requirement"), *aff'd*, 469 F.3d 534 (6th Cir. 2006).

In making this determination, the Court is to make a "direct comparison between the protected mark and the domain name itself," rather than an assessment of the context in which each is used *or the content of the offending website*. *See*

13

*Northern Light Tech. v. N. Lights Club*, 97 F. Supp. 2d 96, 117 (D. Mass. 2000) (noting that the "plain language of the law indicates a direct comparison between the protected mark and the domain name itself: 'a domain name that … is identical to or confusingly similar to that mark'") (citing 15 U.S.C. § 1125(d)(1)(A)(ii)), *aff'd*, 236 F.3d 57 (1st Cir. 2001); *see also Boigris v. EWC P&T, LLC*, 7 F.4th 1079, 1085 (11th Cir. 2021) (same); *Web-adviso v. Trump*, 927 F. Supp. 2d 32, 41 (E.D.N.Y. 2013) ("In determining whether the Domain Names are confusingly similar to the TRUMP mark within the meaning of the ACPA, the court compares "solely [Defendant's] marks and [Plaintiff's] domain names, including their intrinsic sound, sight, and meaning, without reference to goods or services with which the domain name is associated by the parties' use…. The relevant inquiry is whether the Domain Names are confusingly similar to the TRUMP mark, not whether the actual websites accessed using the Domain Names cause confusion or compete with Defendant's business."); J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition*, § 25A:51 (5th ed.) ("It is irrelevant under the ACPA that confusion about a web site's source or sponsorship could be resolved by visiting the web site identified by the accused domain name.") (citing *Coca-Cola v. Purdy*, 382 F.3d 774, 783 (8th Cir. 2004) ("The fact that confusion about a website's source or sponsorship could be resolved by visiting the website is not relevant to whether the domain name itself is

14

identical or confusingly similar to a plaintiff's mark.")). Thus, in this case, Defendant's comparison of the *content*/landing page of the dejavu.com website with the *content*/landing page of its dejavushowgirls.com website is immaterial under element three of the ACPA test.

The Court finds that Plaintiff has sufficiently pleaded that Defendant's Domain Name, dejavushowgirls.com, is "identical or confusingly similar to" Plaintiff's distinctive Mark, DEJAVUSHOWGIRLS.

### 2.      Bad faith intent to profit (fifth element)

The Court next considers the fifth element of Plaintiff's ACPA claim – whether Defendant registered the "dejavushowgirls.com" Domain Name with a "bad intent to profit." For the fifth element, the ACPA lists several factors a court may consider in determining whether a person has a bad faith intent, including:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B).

"These factors, as a whole, focus on whether the defendant's use of the disputed domain name is legitimate – *i.e.*, for some purpose other than simply to profit from the value of the trademark." *Greatdomains.Com*, 177 F. Supp. 2d at 642.

16

"Generally, the plaintiff need not show evidence of bad faith in relation to each of the nine enumerated factors." *Dearborn Tree Serv., Inc. v. Gray's Outdoor Servs., LLC*, No. 13-cv-12584, 2015 WL 5063371, at *6 (E.D. Mich. Aug. 27, 2015) (citing *Basile Baumann Prost Cole & Assocs., Inc. v. BBP & Assocs. LLC*, 875 F. Supp. 2d 511, 532-33 (D. Md. 2012) (finding that evidence related to only two of the nine factors was enough to raise material fact issue and deny summary judgment); *Carnivale v. Staub Design, LLC*, 700 F. Supp. 2d 660, 669 (D. Del. 2010) (finding that four factors in plaintiff's favor were enough)).

Further, Courts "are not limited to considering just the listed factors when making [the] determination of whether the statutory criterion has been met. The factors are, instead, expressly described as indicia that 'may' be considered along with other facts." *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 498 (2d Cir. 2000) (citing 15 U.S.C. § 1125(d)(1)(B)(i)). "The role of the reviewing court is not simply to add factors and place them in particular categories, without making some sense of what motivates the conduct at issue. The factors are given to courts as a guide, not as a substitute for careful thinking about whether the conduct at issue is motivated by a bad faith intent to profit." *Lucas Nursery and Landscaping, Inc. v. Grosse,* 359 F.3d 806, 811 (6th Cir. 2004).

17

Defendant argues that Plaintiff's Complaint fails to include well-pleaded, non-conclusory, factual allegations to support any of these factors. (Def.'s Mot. at pp. 9-12, PageID.123-26.) Defendant contends that the "majority of the allegations" are pleaded "upon information and belief," but that such allegations can only be well-pleaded if they contain specific, supporting factual allegations. (*Id.*) Defendant specifically argues that Plaintiff's allegations that Defendant acted with a bad faith intent to profit are conclusory and cannot be relied on because they are based on "information and belief." (*Id.* at p. 9, PageID.123.) Defendant cites, in part, *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (*Southfield*). (*Id.* at pp. 9-10, PageID.123-24.) *Southfield* states that:

> [A] plaintiff cannot overcome a Rule 12(b)(6) motion to dismiss simply by referring to *conclusory* allegations in the complaint that the defendant violated the law. Instead, the sufficiency of a complaint turns on its factual content, requiring the plaintiff to plead enough factual matter to raise a plausible inference of wrongdoing. The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct.

*Southfield*, 727 F.3d at 504 (internal citations omitted). In *Southfield*, the fact that the allegations were made upon "information and belief" was not the problem as much as the fact that the allegations were conclusory and unsupported by factual content in the complaint. *See id.* at 505-06 (noting that "[t]hese 'naked assertions

18

devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint.") (citing *Iqbal*, 556 U.S. at 678 (internal quotation marks and alteration omitted)).

But allegations asserted upon information and belief are not *per se* insufficient to withstand a Rule 12(b)(6) motion; the Court must consider the pleading's factual allegations as a whole. *Smith v. General Motors LLC*, 988 F.3d 873, 885 (6th Cir. 2021) (stating that "complaints grounding claims on 'information and belief' can survive a motion to dismiss" if they "'set forth a factual basis for such belief'"); *Gold Crest, LLC v. Project Light, LLC*, 525 F. Supp. 3d 826, 837 n.10 (N.D. Ohio 2021) ("Factual allegations based upon information and belief may be sufficient to support a plausible claim for purposes of Rule 12(b)(6) analysis where the factual allegations in the entire pleading allow the Court to draw the reasonable inference that defendant is liable for the conduct alleged.") (citation omitted).

Here, Plaintiff's allegation, upon "information and belief," that Defendant acted "with a bad faith intent to profit," is not considered in isolation, but must be considered in the context of the entire Complaint, including the factual allegations that: (1) Defendant has no intellectual property rights in or to the DEJA VU Family of Marks; (2) Defendant's Domain Name is essentially identical to Plaintiff's Mark and does not contain Defendant's legal name; (3) Plaintiff did not authorize or

19

consent to such use; (4) Defendant's Domain Name is configured to display pay-per-click advertisements to visitors, which provide links to Adult related entertainment sites; (5) as such, Defendant's Domain Name is likely to be confused with Plaintiff's legitimate online location at dejavu.com and the Deja Vu Family of Domains, and deceive the public; and, (6) Defendant's website harms Plaintiff's reputation and the goodwill associated with the DEJA VU Family of Marks by causing customers to associate Plaintiff with the negative qualities of Defendant's website.

According to Defendant, the only two allegations that are not alleged "upon information and belief," or otherwise conclusory, are that the website resolving from the Domain Name at one point contained pay-per-click advertisements, including some adult-related entertainment options, and that Defendant is the registrant. (Def.'s Mot. at p. 10, PageID.124, citing Compl. ¶¶ 25-26, 37.)

However, that is not accurate. While Plaintiff's Complaint does allege, "[u]pon information and belief," that "Defendant has registered and/or re-registered and used the Infringing Domain Name dejavushowgirls.com with a bad faith intent to profit from the goodwill established by Plaintiff in the DEJA VU Family of Mark," (Compl. ¶ 42), Plaintiff's Complaint also alleges that:

20

- The Defendant Domain Name is Dejavushowgirls.com, which is identical and/or confusingly similar to Global's DEJA VU Family of Marks with .COM appended to the end. (Compl. ¶ 22)

- The use of the DEJA VU SHOWGIRLS Mark within the Defendant Domain Name and/or associated website is without authorization from Global. (*Id.* ¶ 23.)

- When one attempts to access the dejavushowgirls.com domain, the Defendant Domain Name is configured to display pay-per-click advertisements to visitors when those visitors were actually seeking the dejavu.com site. (*Id.* ¶ 25)

- The pay-per-click advertisements as one goes through the links provides among other options offer [sic] Adult related entertainment sites such as Love Honey and Mature-Qualitysingles. (*Id.* ¶ 26)

- The website displayed by the registrant of the Defendant Domain Name is likely to be confused with Global's legitimate online location at dejavu.com and Deja Vu Family of Domains. (*Id.* ¶ 34)

- The website displayed by the registrant of the Defendant Domain Name is likely to cause confusion, or cause mistake, or to deceive the relevant public as to the source or sponsorship of that website, and to mislead the public into believing that such website emanates from, is approved or sponsored by, or is in some way associated or connected with, Global. (*Id.* ¶ 35)

- Defendant has no intellectual property rights in or to the DEJA VU Family of Marks. (*Id.* ¶ 43)

- Defendant has engaged in conduct described in this Complaint without consent or authorization. (*Id.* ¶ 44)

- Defendant's website harms Plaintiff's reputation and the goodwill associated with the DEJA VU Family of Marks by causing customers to associate Plaintiff with the negative qualities of Defendant's website, including, but not

limited to, the confusing and deceptive manner in which the infringing website generates internet traffic, the confusing and deceptive content of the infringing website, the misleading nature of the commercial activities carried on at the infringing website, the shoddy design of the infringing website, the unreliable functionality of the infringing website, and the ephemeral nature of the infringing website. (*Id.* ¶ 45.)

In this case, it is understandable that, at this stage, Plaintiff does not have firsthand knowledge of all the facts asserted in its Complaint. However, considering the Complaint's factual allegations as a whole, pleading of some allegations upon information and belief does not render the pleading entirely ineffectual. As the court explained in *Greatdomains.Com*, "[b]ecause defendants easily can conjure up a 'legitimate' use for a domain name that incorporates a trademark, plaintiffs frequently will find it difficult, if not impossible, to obtain evidence probative of 'bad faith intent' without court sanctioned discovery," and "where facts showing a *prima facie* case of 'intent to profit' have been alleged, the element of bad faith generally will not come into play until the summary judgment stage." *Greatdomains.Com*, 177 F. Supp. 2d at 643 ("Indeed, obtaining information relevant to almost all of the bad faith factors set forth in the statute requires direct testimony from the defendant.").

Given the Court's limited review under Rule 12(b)(6), and that it must accept as true the factual allegations in Plaintiff's Complaint, and draw all reasonable

22

inferences in Plaintiff's favor, the Court finds that Plaintiff has sufficiently pleaded that Defendants acted with a bad faith intent to profit. *See Greatdomains.Com*, 177 F. Supp. 2d at 644 (finding that, even though there is no evidence that defendant had an "intent to profit," the allegation that defendant's domain was posted for sale "is sufficient to let this case proceed to discovery"); *see also DaimlerChrysler*, 388 F.3d at 207 (affirming grant of summary judgment, finding bad faith based on allegations that "1) the defendants had no intellectual property rights in the 'foradodge' name at the time of registration; 2) the domain name does not contain any variation of the names of the defendants; 3) the defendants have never *actually* used the site in connection with the bona fide offer of goods or services; 4) the defendants never claim that they used the site for any noncommercial or other 'fair use;' 5) it can be inferred that the defendants intended to divert customers from the plaintiff's website from the fact that the defendants' 'foradodge' domain name is phonetically identical to plaintiff's 4ADODGE mark; 6) the defendants provided misleading contact information as the site's registrant, initially listing the registrant as The Net Inc., of Hewlett, New York, while no such entity exists; 7) the defendants registered multiple sites, such as doj.com, espnet.com, ups.net, which are confusingly similar to names and marks of others; and finally 8) DODGE is a highly distinctive and famous mark"); *Entrepreneur Media, Inc. v. B-Entrepreneur.com*, No. 1:11cv583, 2012 WL

23

12863350, at *4 (E.D. Va. Feb. 9, 2012) (finding plaintiff sufficiently alleged bad faith intent to profit by alleging that defendant had no intellectual property rights in the infringing domain, did not offer bona fide goods or services and only generated pay-per-click revenue, and that the content offered at the infringing site is confusingly similar to that available at plaintiff's site, which evidences an intent to divert consumers from plaintiff's site in a way that could tarnish the goodwill represented by plaintiff's mark), *report and recommendation adopted*, 2012 WL 12869317 (E.D. Va. Apr. 26, 2012); *but see XPO CNW, Inc. v. R+L Carriers, Inc.*, No. 16-10391, 2016 WL 4801283, at *5 (E.D. Mich. Sept. 14, 2016) (finding plaintiff's allegations that defendant "has registered and has used 'www.conwaylayoff.com' without Plaintiffs' authorization and with bad faith intent to profit from Plaintiffs' trademark" and that the infringing domain name … directed or redirected to an authorized website controlled by Defendant R&L [sic], which profited from its use" insufficient to survive the *Twombly* standard).[4]

---

[4] The Court finds that Defendant's reliance on *Greatdomains.Com*, with respect to defendant Greatdomains.com, and *Academy of Motion Picture Arts and Sciences v. GoDaddy.Com, Inc.*, No. CV 10-03738, 2015 WL 5311085 (C.D. Cal. Sept. 10, 2015) (*AMPAS*), to support dismissal of Plaintiff's Complaint in misplaced The facts in those cases, as relied on by Defendant, are different from this case, as those cases addressed, at least in part, the culpability of a *registrar* of domain names (like *GoDaddy.com* or *Greatdomains.Com*), as opposed to the *registrant* of the domain names, like Defendant here (and like defendant EFF in the *Greatdomains.Com* case).

**B.      Plaintiff Has Stated a Claim for Trademark Infringement, 15 U.S.C. § 1114(1)(a) (Count II)**

Section 1114(1) of the Lanham Act imposes liability on any entity that "use[s] in commerce any … colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a).

"To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

Defendant argues that Plaintiff fails to state a claim for trademark infringement because it fails to sufficiently plead "use in commerce" or "likelihood of confusion." (Def.'s Mot. at pp. 12-14, PageID.126-28.)

---

As discussed above, the court in *Greatdomains.Com* found that the plaintiff had stated a claim against the domain name registrants under the ACPA. In addition, the *AMPAS* case involved the court's findings of fact and conclusions of law following a bench trial, not a ruling on a motion to dismiss.

### 1.    Use in commerce

Defendant asserts that, in the Eastern District of Michigan, "neither registering, nor warehousing, nor trafficking in a domain name that incorporates a protected trademark is alone sufficient to support claims of trademark infringement or dilution. Both causes of action require use of a trademark in connection with goods or services, which, in the cybersquatting context, generally will require evidence that the domain was used to host a website from which goods or services have been offered over the Internet." *Greatdomains.Com*, 177 F. Supp. 2d at 655. "Infringement claims consistently have been dismissed by courts, regardless whether based on allegations of (1) mere registration, (2) warehousing, or (3) actual trafficking." *Id.* at 647 (internal citations omitted).

Plaintiff asserts that it specifically pleaded that "[t]he use of dejavushowgirls.com on the top of defendant's website is use in commerce." (Pl.'s Resp. at p. 5, PageID.161, citing Compl. ¶ 55.) Plaintiff states that its Complaint then provides a screenshot of defendant's website/use. (*Id.*) Plaintiff states that the Complaint further provides that when one attempts to access the dejavushowgirls.com domain, the domain is configured to display pay-per-click advertisements to visitors when those visitors were actually seeking the dejavu.com site, and  that "[t]he pay-per-click advertisements as one goes through the links

provides among other options [] Adult related entertainment sites such as Love Honey and Mature-Qualitysingles. (*Id.* citing Compl. ¶¶ 25-26 and Ex. C.)

Both Plaintiff and Defendant agree that the Sixth Circuit has not yet addressed whether a registrant's advertising on a pay-per-click website constitutes the type of "use" contemplated by the Lanham Act. (Pl.'s Resp. at p. 7, PageID.163 (stating further that "most Courts have yet to specifically address the issue").) (Def.'s Reply at p. 1, PageID.250.) Thus, this appears to be a unique issue for this Court to resolve.

Defendant argues that there are no allegations in Plaintiff's Complaint that the Domain Name dejavushowgirls.com was used in connection with any goods or services, and that mere display of the domain name, or mere advertising, does not constitute use in commerce. (Def.'s Mot. at p. 14, PageID.128) (Def.'s Reply at p. 2, PageID.251.)

Plaintiff argues that it has pleaded that the Defendant is the registrant that placed dejavushowgirls.com on the front page of its pay-per-click website and provided links to confusingly similar products and services, and thus that Plaintiff has sufficiently pleaded "use." (Pl.'s Resp. at p. 9, PageID.165.)

The Lanham Act is a strict liability statute, and thus the subjective intent of the infringing party in creating a website is irrelevant. *Taubman Co. v. Webfeats*, 319 F.3d 770, 775 (6th Cir. 2003) (noting "[i]f consumers are confused by an

27

infringing mark, the offender's motives are largely irrelevant"). Even "extremely minimal" commercial activity, such as providing a link to a third-party website that sells goods or provides services, can trigger liability. *Id.* ("We believe the advertisements on Mishkoff's site, though extremely minimal, constituted his use of Taubman's mark "in connection with the advertising" of the goods sold by the advertisers. This is precisely what the Lanham Act prohibits."); *see also Audi AG v. D'Amato*, 469 F.3d 534, 546 (6th Cir. 2006) ("Even 'minimal' advertisements constitute use of the owner's trademark in connection with the advertising of the goods, which the Lanham Act proscribes."); *XPO-CNW Inc.*, 2016 WL 4801283, at *3 (finding that although "the bulk of the website does focus on recruiting potential employees," "[t]he invitation to visit R+L's commercial website alone is enough to clear the 'extremely minimal' bar set by the Sixth Circuit with respect to commercial activity"); *International Bhd. of Teamsters Local 651 v. Philbeck*, 423 F. Supp. 3d 364, 373 (E.D. Ky. 2019) ("Even 'extremely minimal' commercial activity, such as providing a link to a third-party website that sells goods, can trigger liability" under the Lanham Act).

The Court finds, construing the allegations in the Complaint in the light most favorable to Plaintiff, accepting those allegations as true, and drawing all reasonable inferences in favor of Plaintiff, that that Plaintiff has sufficiently alleged that it owns

the trademark DEJU VU SHOWGIRLS, that Defendant used that mark, or a confusingly similar mark, in commerce, and that the use was likely to cause confusion. The Court does not need to decide at this stage of the proceedings the extent to which the Complaint's allegations will be proven true or whether Plaintiff ultimately will prove to be entitled to relief.

### 2. Confusingly similar

Defendant also argues that there are no well-pleaded allegations in Plaintiff's Complaint that any person was or could be confused by the Domain Name, dejavushowgirls.com, because the content on the dejavu.com website bears little to no resemblance to the content on the dejavushowgirls.com website. (Def.'s Mot. at p. 14, PageID.128.) Defendant cites *Dassault Systemes, SA v. Childress*, 828 F. App'x 229, 250-51 (6th Cir. 2020), as rejecting a plaintiff's "initial interest" confusion theory where it was immediately apparent upon viewing the website resolving from the domain name that the website was not affiliated with plaintiff. (*Id.*) *See Dassault Systemes*, 828 F. App'x at 251 (noting that defendant's website has "numerous indicators that clarify it is not affiliated with Dassault," including the disclaimer "'CATIA is a registered trademark of Dassault Systemes and has no affiliation with Practical Catia Training.'").

Plaintiff argues in response that it has sufficiently pleaded that Defendant's use of its dejavushowgirls.com Domain Name was likely to cause confusion with Plaintiff's DEJA VU SHOWGIRLS Mark. (Pl.'s Resp. at pp. 9-10, PageID.165-66.) Plaintiff's Complaint includes a screenshot of Defendant's Domain Site with dejavushowgirls.com at the top. (Compl. ¶ 55, PageID.11-12.) Plaintiff further alleges that the pay-per-click advertisements on Defendant's website provides, among other options, Adult related entertainment sites such as Love Honey and Mature-Qualitysingles. (*Id.* ¶ 26.) There is no disclaimer language or other indicator apparent on Defendant's website distinguishing itself from Plaintiff's Mark.

Courts consider the following eight factors in the "likelihood of confusion" determination: "(1) strength of plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing of channels used; (6) degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion in selecting the mark." *D'Amato,* 469 F.3d at 542-43 (citation omitted). "The 'ultimate question' in assessing likelihood of confusion is 'whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Dassault Systemes*, 828 F. App'x at 250 (quoting *Interactive Prods. Corp. v. a2z Mobile Off. Sols., Inc.*, 326 F.3d 687, 695 (6th Cir. 2003)).

30

Plaintiff's Complaint alleges, in part:

- When one attempts to access the dejavushowgirls.com domain, the Defendant Domain Name is configured to display pay-per-click advertisements to visitors when those visitors were actually seeking the dejavu.com website. (Compl. ¶ 25)

- The pay-per-click advertisements as one goes through the links provides among other options Adult related entertainment sites such as Love Honey and Mature-Qualitysingles. (*Id.* ¶ 26, and referring to Ex. C, Screenshots of dejavushowgirls.com pay-per-click advertising)

- The website displayed by the registrant of the Defendant Domain Name is likely to be confused with Global's legitimate online location at dejavu.com and Deja Vu Family of Domains. (*Id.* ¶ 34)

- The website displayed by the registrant of the Defendant Domain Name is likely to cause confusion, or to cause mistake, or to deceive the relevant public as to the source or sponsorship of that website, and to mislead the public into believing that such website emanates from, is approved or sponsored by, or is in some way associated or connected with Global. (*Id.* ¶ 35)

- Defendant's aforesaid use of the dejavyshowgirls.com mark is without GLOBAL's authorization or consent. (*Id.* ¶ 56)

- Defendant's unauthorized use of the dejavushowgirls.com mark in connection with their pay per click website is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendant or its services with GLOBAL's licenses and its federally-registered DEJA VU Family of Marks in violation of 15 U.S.C. § 1114(1)(a). (*Id.* ¶ 57)

- Defendant's unauthorized conduct has deprived and will continue to deprive GLOBAL of the ability to control the consumer perception of its marks and licenses of entertainment service businesses provided in connection with its DEJA VU Family of Marks, placing the valuable reputation and goodwill of

GLOBAL in the hands of Defendant, over whom GLOBAL has no control. (*Id.* ¶ 58).

Accordingly, Plaintiff has alleged that its trademarks are strong and that the domain name registered by Defendant incorporates the exact working of Plaintiff's trademark. "This factor strongly favors a finding of actual confusion," *Advance Magazine Publishers, Inc. v. Tinsley*, No. 3:18-cv-13575, 2019 WL 1285089, at *2 (E.D. Mich. Mar. 20, 2019), and "[t]he existence of actual confusion is highly probative of trademark confusion." *D'Amato*, 381 F. Supp. 2d at 661. Further, "[c]onfusingly similar marks may lead a purchaser who is extremely careful and knowledgeable about the [goods or services] he is buying to assume nonetheless that the seller is affiliated with or identical to the other party." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 286 (6th Cir. 1997). And, direct evidence of the defendant's "intent of causing confusion" is unnecessary, as use of a protected mark, coupled with knowledge of its protection, supports a finding of intent. *Id.*

Plaintiff's allegations in its Complaint must be accepted as true when deciding Defendant's motion to dismiss, and whether Plaintiff can ultimately prove such a claim is another matter, and not before the Court at this time. The Court finds that Plaintiff has sufficiently set forth allegations leading to a plausible inference of

liability on Defendant's part in using Plaintiff's trademark in commerce in a way likely to cause confusion, and that Plaintiff has sufficiently pleaded a claim of trademark infringement.[5]

## IV.   CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant's motion to dismiss (ECF No. 10).

Defendant is **ORDERED** to file an answer to Plaintiff's Complaint within fourteen (14) days.


IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: January 28, 2022

---

[5] Defendant argues at the end of its motion that Plaintiff does not have the exclusive right to control domain names that include "dejavu" or "deja vu," or the authority to exclude others from using that character string. (Def.'s Mot. at pp. 14-16, PageID.128-30.) This argument is a nonstarter. As Plaintiff states in its Response, it has not pleaded that it owns all domains that include dejavu or deja vu, but only that it has the right to control the use of dejavushowgirls.com, a unique domain name that is identical to Plaintiff's DEJA VU SHOWGIRLS Mark, for which Defendant has no legitimate interest to control and use. (Pl.'s Resp. at p. 11, PageID.167.)